Approved: _____   ORIGINAL
DANIEL C. RICHENTHAL
Assistant United States Attorney

Before:     THE GABRIEL W. GORENSTEIN
            United States Magistrate Judge
            Southern District of New York

**14 MAG 1299**

- - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA              :   **SEALED COMPLAINT**
                                      :
    - v. -                            :   Violations of
                                      :   18 U.S.C. §§ 1001 and 1343;
ERIC GIVENS,                          :   29 U.S.C. § 501(c)
                                      :
              Defendant.              :   COUNTY OF OFFENSE:
                                      :   NEW YORK
- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

JEREMY W. ROSENMAN, being duly sworn, deposes and says that he is an Investigator with the United States Department of Labor ("DOL"), Office of Labor-Management Standards ("DOL-OLMS"), and charges as follows:

COUNT ONE
(Wire Fraud)

1. From at least in or about 2008 up to and including in or about October 2013, in the Southern District of New York and elsewhere, ERIC GIVENS, the defendant, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice to defraud, to wit, GIVENS executed a scheme to embezzle money from the Amtrak Police Lodge 189 Labor Committee and Amtrak Police Lodge 189 Inc., using, among other things, debit card charges and ATM cash withdrawals in multiple states.

(Title 18, United States Code, Section 1343.)

DOC # _____1_____

FILED JUN 10 2014

COUNT TWO
(Embezzlement of Union Funds)

2. From at least in or about 2009 up to and including in or about April 2010, in the Southern District of New York and elsewhere, ERIC GIVENS, the defendant, embezzled, stole, and unlawfully and willfully abstracted and converted to his own use, and the use of another, moneys, funds, securities, property, and other assets of a labor organization of which he was an officer, to wit, GIVENS, while serving as the Treasurer of the Labor Committee, embezzled and stole money from the Labor Committee by charging personal expenses to the Labor Committee and withdrawing cash from a Labor Committee bank account for non-Labor Committee purposes.

(Title 29, United States Code, Section 501(c).)

COUNT THREE
(False Statement to a Federal Investigator)

3. On or about January 29, 2013, in the Southern District of New York, ERIC GIVENS, the defendant, willfully and knowingly, in a matter within the jurisdiction of the executive branch of the Government of the United States, did falsify, conceal, and cover up by trick, scheme, and device a material fact, and did make a materially false, fictitious, and fraudulent statement and representation, to wit, during a telephonic interview by a DOL-OLMS investigator conducting an investigation of the financial affairs of the Amtrak Police Lodge 189 Labor Committee (the "Labor Committee"), GIVENS knowingly falsely stated that he had withdrawn cash on several occasions in 2012 from a bank account of the Labor Committee because the Labor Committee was out of checks but needed to cover outstanding Labor Committee bills.

(Title 18, United States Code, Section 1001.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4. I am an Investigator with DOL-OLMS and have been most recently employed by DOL-OLMS since October 2012. I have participated in the investigation of this matter, and I am familiar with the information contained in this affidavit based on my own personal participation in the investigation, my review of documents, and conversations that I have had with other law enforcement officers and other individuals. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not

include all the facts that I have learned during the course of my investigation. Where the contents of documents, and the actions and statements of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Background

5. Based on my training and experience, my review of documents, and my conversations with others, I have learned the following:

    a. The Amtrak Police Lodge 189 Labor Committee (referred to herein as the "Labor Committee") is a union for National Railroad Passenger Corporation ("Amtrak") police officers working throughout the United States. The Labor Committee is a "labor organization" as defined in 29 U.S.C. § 402(i).

    b. Amtrak Police Lodge 189 Inc. (the "Lodge"), is a fraternal organization affiliated with the Labor Committee.

## Summary of the Scheme

6. As set forth below, the investigation has revealed that starting in or about 2008, ERIC GIVENS, the defendant, an Amtrak police officer, while serving as the Treasurer of the Labor Committee and the Treasurer of the Lodge, improperly obtained at least $100,000 in total from the Labor Committee and Lodge by fraudulently charging personal expenses to Labor Committee and/or Lodge and by withdrawing cash for his own purposes, and took steps to hide what he had done.

## The Investigation

### The Defendant's Roles at the Labor Committee and the Lodge

7. Based on my review of documents and my interviews of Amtrak police officers and others, I have learned the following, in substance and in part:

    a. ERIC GIVENS, the defendant, has been employed as a police officer with Amtrak since in or about May 1997, and is currently assigned to Penn Station, in New York, New York.

    b. ERIC GIVENS, the defendant, served as the Treasurer of the Labor Committee from in or about 2003 through in or about January 2010, when another Amtrak police officer was elected as Treasurer of the Labor Committee.

c.    Pursuant to Labor Committee Constitution and By-Laws, the Treasurer of the Labor Committee "shall keep an accurate record of all money received and paid," including "itemized expenses of the Committee."

d.    During the same time period, and continuing until in or about November 2013, ERIC GIVENS, the defendant, also served as Treasurer of the Lodge.

e.    Pursuant to Lodge Constitution and By-Laws, the Treasurer of the Lodge "shall keep an accurate record of all money received and paid," including "itemized expenses of the Lodge," and all expenditures over $1,500 must be approved by a majority of Lodge members.

Attempts to Obtain Bank Records from the Defendant and the Defendant's Meeting with Other Officers

8.    Based on my interviews of Amtrak police officers, I have learned the following, in substance and in part:

a.    In or about Fall 2013, the Lodge was contacted by an insurance company (the "Insurance Company") that the Lodge had engaged in or about 2010 to provide certain insurance for Lodge members. The Insurance Company reported that pertinent insurance policy had been canceled for non-payment.

b.    Thereafter, other officers of the Lodge asked ERIC GIVENS, the defendant, who had been tasked with paying the Insurance Company, to provide records of the Lodge's finances. GIVENS provided certain receipts, but did not provide bank statements.

c.    The President of the Lodge approached GIVENS in Penn Station and asked GIVENS to call up the Lodge's bank records on a computer. GIVENS responded that he could not do so from any computer other than that at his home, but he would bring the records to work the following day. He did not do so.

d.    The President of the Lodge asked GIVENS to accompany him to a bank branch across the street from Penn Station so that GIVENS could obtain Lodge bank records. GIVENS responded that he did not have his Lodge ATM card with him and therefore could not obtain the records.

    e. In or about November 2013, the President, Vice President, and other officers of the Lodge met with GIVENS in a conference room in Penn Station. During this meeting, GIVENS admitted that he had stolen money from a Lodge bank account for his own purposes, but stated that he had only taken approximately $10,000. GIVENS denied having taken any money from any Labor Committee's bank account.

    f. In connection with the meeting, GIVENS was asked to log-in to the Lodge's bank account online, and to print out statements. He did so. The statements showed a number of cash withdrawals and charges unrelated to Lodge business, including charges at restaurants in New Jersey, and charges at what appeared to be an adult entertainment business near GIVENS' residence.

    g. At the close of the meeting, GIVENS was asked to hand over the Lodge's ATM/debit card and to resign as Treasurer of the Lodge. He did so.

### Review of Bank Records

    9. Based on my review of bank records of the Lodge and the Labor Committee, which review is ongoing, and my review of other business records, I have learned the following:

    a. GIVENS was one of two signatories on the Labor Committee's checking account (the "Labor Committee Checking Account") until April 2010. Starting by at least 2009, the sole ATM/debit card linked to the Labor Committee Checking Account (the "Labor Committee ATM Card"), which was issued in name "Eric Givens," was used to charge expenses with no apparent relation to the Labor Committee, including gasoline and food.

    b. Starting in December 2009, repeated cash withdrawals were made from the Labor Committee Checking Account at ATMs in New York and in New Jersey, close in time. For example, a $600 cash withdrawal was made at an ATM on January 1, 2010, a $600 cash withdrawal was made at an ATM on January 4, 2010, a $600 cash withdrawal was made at an ATM on January 30, 2010, and a $600 cash withdrawal was made at an ATM on February 6, 2010.

    c. In January 2010, a $2,000 cash withdrawal was made from the Labor Committee Checking Account using a teller at a bank branch in Penn Plaza in New York, New York, by a person presenting the Labor Committee ATM Card.

    d. In April 2010, a $1,500 cash withdrawal was made from the Labor Committee Checking Account using a teller at the same bank branch in Penn Plaza in New York, New York, by a person presenting the Labor Committee ATM Card.

    e. GIVENS was one of two signatories on one of the Lodge's two bank accounts ("Lodge Account-1") and was the sole signatory on the other of the Lodge's two bank accounts ("Lodge Account-2") until November 2013. During this time, the only ATM/debit cards linked to Lodge Account-1 and Lodge Account-2 were issued in the name "Eric Givens."

    f. Starting by at least 2008, numerous cash withdrawals were made from Lodge Account-1 at ATMs in New York, New Jersey, and Pennsylvania, and at a least one bank branch. More than $9,000 was withdrawn in cash in from the Lodge Account-1 in 2009; more than $17,000 was withdrawn in cash in 2010; more than $20,000 was withdrawn in cash in 2011; more than $24,000 was withdrawn in cash in 2012; and more than $12,000 was withdrawn in cash in 2013 through October of that year. Starting by at least 2010, numerous cash withdrawals were also made from Lodge Account-2 at ATMs in New York, New York and in New Jersey. More than $6,000 was withdrawn in cash in 2010; and more than $4,000 was withdrawn in cash in 2011, after which the Lodge Account-2 had a balance of zero.

    g. Starting by at least 2008, the ATM/debit card linked to the Lodge Account-1 was used to charge expenses with no apparent relation to the Lodge, including gasoline, food, travel, hotels, and entertainment in New York and New Jersey. These expenses included, among other things, a charge at a hotel across the street from Penn Station, charges at hotels in other cities, multiple payments to the provider of cable television service to GIVENS's residence in Pennsylvania ("GIVENS's Residence"), multiple payments to the company providing garbage pick-up service to GIVENS's Residence, and payments to Nordstrom, a department store. To date, I have identified more than $20,000 in charges unrelated to Lodge business.

Interviews by DOL-OLMS of the Defendant

10. On or about December 13, 2012, in connection with a review by DOL-OLMS of the financial affairs of the Labor Committee, I participated in an interview of ERIC GIVENS, the defendant. During this interview, which took place in New York, New York, GIVENS stated, in substance and in part:

a. GIVENS served as Treasurer of the Labor Committee from in or about November 2003 through January 2010. During this time, he was responsible for the Labor Committee's books and records and filings with DOL, and was the signatory on the Labor Committee's bank account.

b. GIVENS did not typically make cash withdrawals to cover Labor Committee expenses, except towards the end of his term as Treasurer, when he took out cash because the Labor Committee ran out of checks but needed to cover outstanding bills.

c. After GIVENS lost his most recent reelection campaign, and a new Treasurer was slated to take over, GIVENS did not provide the new Treasurer with all of the Labor Committee's books and records, because GIVENS did not think that he had to do so.

11. On or about January 29, 2013, I participated in a second interview of ERIC GIVENS, the defendant. During this interview, which took place while I was in DOL-OLMS's offices in New York, New York, GIVENS stated, in substance and in part, that he had withdrawn cash from the Labor Committee's checking account on several occasions in or about the first quarter of 2010 because the Labor Committee was out of checks but needed to cover certain outstanding Labor Committee bills. When questioned about a particular cash withdrawal, of $1,500 on or about April 6, 2010, after GIVENS was no longer Treasurer of the Labor Committee, GIVENS did not deny making this withdrawal, and stated that he could not explain its purpose.

Summary of Loss

12. Based on the investigation to date, I estimate that ERIC GIVENS, the defendant, improperly obtained more than $100,000 in total from the Labor Committee and Lodge.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of ERIC GIVENS, the defendant, and that he be imprisoned, or bailed, as the case may be.

```
_____
JEREMY W. ROSENMAN
Investigator
DOL-OLMS
```

Sworn to before me this
10th day of June, 2014

```
_____
THE GABRIEL W. GORENSTEIN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK
```